**ORAL ARGUMENT HAS BEEN SCHEDULED FOR MAY 8, 2023**

**No. 22-1264**
**No. 22-1295**

---

**UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA**

---

XCEL PROTECTIVE SERVICES, INC.,

Petitioner/Cross-Respondent,

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent/Cross-Petitioner.

---

**FINAL REPLY BRIEF OF PETITIONER/CROSS RESPONDENT XCEL PROTECTIVE SERVICES, INC.**

---

Jason R. Stanevich (DC53510)
jstanevich@littler.com LITTLER
MENDELSON, P.C.
One Century Tower
265 Church Street, Suite 300
New Haven, CT 06510
Telephone:  203.974-8700
Facsimile: 203.974.8799

**Attorneys for Petitioner/Cross-Respondent**
**XCEL PROTECTIVE SERVICES, INC.**

Date:  April 6, 2023

TABLE OF CONTENTS

PAGE

GLOSSARY.................................................................................................1

I.      SUMMARY OF ARGUMENT.........................................................2

II.     ARGUMENT.....................................................................................3

        A.      The Court is not Barred from Considering Xcel's Argument that
                Salopek's Conduct was Not for the Mutual Aid or Protection of the
                Company's Security Guards...................................................3

        B.      Mark Salopek's Conduct Was Not Protected when it was Not for the
                Mutual Aid or Protection of the Company's Security Guards............4

        C.      The Court has Jurisdiction to Hear Argument Regarding the Well-
                Established Precedent Applying *Jefferson Standard*, in Connection
                with Salopek's Failure to Disclose the Existence of an Ongoing Labor
                Dispute..................................................................6

        D.      The Board's Decision that Mark Salopek Engaged in Protected
                Concerted Activity is Contrary to the NLRA, *Jefferson Standard*, and
                Well-Established Precedent Applying *Jefferson Standard* Where He
                Failed to Disclose the Existence of an Ongoing Labor Dispute, as
                Required ...............................................................7

        E.      Mark Salopek's Complaint was Maliciously False.............................9

        F.      Mark Salopek's Alleged Protected Concerted Activity was Not a
                Motivating Factor in His Discharge ..................................11

        G.      Xcel Would Have Terminated Mark Salopek, Even Absent His
                Alleged Protected Concerted Activities ............................13

III.    CONCLUSION.............................................................15

i

TABLE OF AUTHORITIES

PAGE

**CASES**

*Bos. Mut. Life Ins. Co. v. N.L.R.B.,*
        692 F.2d 169 (1st Cir. 1982) ...................................................12

*DirectTV, Inc. v. NLRB,*
        837 F.3d 25 (D.C. Cir. 2019) ...........................................10, 11

*Endicott Interconnect Technologies, Inc. v. NLRB,*
        453 F.3d 532 (D.C. Cir. 2006) ...............................................9

*Five Star Transp. Inc. v. NLRB,*
        522 F.3d 46 (1st Cir. 2008) ......................................................7

*Guardsmark, LLC v. N.L.R.B.,*
        475 F.3d 369 (D.C. Cir. 2007) ..............................................11

*N.L.R.B. v. Neuhoff Bros., Packers,*
        375 F.2d 372 (5th Cir. 1967) .................................................13

*NLRB v. Local Union 1229, Int'l Brotherhood of Electrical Workers
(Jefferson Standard)*,
        346 U.S. 464 (1935) ................................................................2

*Nova Se. Univ. v NLRB,*
        807 F.3d 308 (D.C. Cir. 2015) ................................................3

*Three d, LLC,*
        361 NLRB 308 (2014) .............................................................7

*Three D, LLC v. N.L.R.B.,*
        629 F. App'x 33 (2d Cir. 2015) ...............................................8

*St. Luke's Episcopal-Presbyterian Hospitals v. NLRB,*
        268 F.3d 575 (8th Cir. 2001) ...................................................9

*U-Haul Co. of Nev. Inc. v. NLRB*,
    490 F.3d 957 (D.C. Cir. 2007) ........................................................................6

*United Food & Com. Workers Union, Loc. 400 v. Nat'l Lab. Rels. Bd.*,
    989 F.3d 1034 (D.C. Cir. 2021) ....................................................................6

*United Servs. Auto. Ass'n v. NLRB*,
    378 F.3d 908 (D.C. Cir. 2004) ....................................................................15

# GLOSSARY

**"Act"** refers to the National Labor Relations Act.

**"ALJ"** refers to Administrative Law Judge John Giannopoulos.

**"Board"** or **"NLRB"** refers to the National Labor Relations Board.

**"Company"** or **"Xcel"** refers to Petitioner/Cross-Respondent Xcel Protective Services, Inc.

**"Decision"** refers to <u>Xcel Protective Services, Inc., and International Union, Security, Police, and Fire Professionals of America, Local 5</u>, 371 NLRB No. 134 (2022).

**"Dissent"** refers to the Dissenting Opinion in <u>Xcel Protective Services, Inc., and International Union, Security, Police, and Fire Professionals of America, Local 5</u>, 371 NLRB No. 134 (2022).

**"Region 19"** refers to Region 19 of the National Labor Relations Board.

**"Union"** refers to the International Union, Security, Police and Fire Professionals of America, Local 5

1

## I.     SUMMARY OF ARGUMENT

The Board decision at issue involves a clear misapplication of the facts and the law, and the Respondent's brief fails to provide sufficient support to uphold the decision.  In the Respondent's brief, the Respondent concludes that Salopek's speech was for the mutual aid and protection of the Company's security guards and ignores the evidence that Salopek's comments were for the concern of the company and visitors to a park across the street – not for his colleagues.  The Respondent instead relies on the assumption of what Salopek may have intended to convey instead of relying on the clear wording of what he *actually* said.

Furthermore, the Respondent fails to provide facts to support the Board's finding that, even if Salopek's speech was protected, it lost the protection of the Act under the standard set forth in *NLRB V. Local Union 1229, Int'l Brotherhood of Electrical Workers (Jefferson Standard)*, 346 U.S. 464 (1935), by failing to disclose the existence of an ongoing labor dispute.  Instead, the Respondent misapplies the law and argues that Salopek's comments about workplace safety were sufficient to put the Navy on notice as to an ongoing labor dispute.

Lastly, even if such speech were protected, the Respondent ignores the factual evidence that Salopek's protected activity was not a motivating factor in the Company's decision to terminate his employment and that the Company would have terminated Salopek even absent his protected activity.  The Respondent attempts to argue that the

Company cannot rely upon the Navy's recommendation to terminate Salopek and cannot rely upon a chain of command violation because the Company cannot prohibit Salopek from making complaints to third parties. The Respondent's argument is wholly dependent on ignoring contrary facts. The Respondent tries to rely upon the Company's managers statements towards another employee, who was not terminated for his involvement in the complaints and ignores the fact that nothing in the chain of command prevented Salopek from reporting to the Navy his complaints.

As such, the evidence is clear that the Board has misapplied the facts and law to this case, and the decision should be overturned.

## II.    ARGUMENT

### A.    **The Court is not Barred from Considering Xcel's Argument that Salopek's Conduct was Not for the Mutual Aid or Protection of the Company's Security Guards.**

The Respondent argues that the Court is jurisdictionally barred from considering Xcel's argument regarding mutual aid and protection because Xcel did not raise it to the Board. (Respondent's Brief at pg. 22). While the Respondent cites several cases and the Act in support of this argument, it utterly ignores that Xcel raised this issue generally in the Exceptions it filed, as Xcel argued that Salopek's communications lost the protection of the Act, given the nature of his speech. (Petitioner's Brief at pg. 25). Therefore, the Court is not jurisdictionally barred from considering Xcel's argument because the Board was on notice of the general arguments Xcel was making. *See Nova Se. Univ. v NLRB*, 807 F.3d 308, 313 (D.C. Cir. 2015) ("To properly present and preserve a claim, a party's exception

3

to an ALJ finding must fairly put the Board on notice of the specific grounds for its objections.") (internal quotation marks omitted.).

**B.    Mark Salopek's Conduct Was Not Protected when it was Not for the Mutual Aid or Protection of the Company's Security Guards.**

The evidence clearly showed that Salopek's communications with Morgan and the Navy were not for the mutual aid and protection of the Company's security guards. The Respondent, in its brief, attempts to paint Salopek's complaints as having been for the mutual aid and protection of the Company's security guards simply because Salopek stated that they were safety concerns. However, as the dissent correctly concluded, Salopek's email to Morgan raised seven separate issues, only one of which had any bearing on the security guards' conditions of employment – i.e., the claim that "someone could have gotten hurt" with respect to the shooting occurring at a gravel pit. The remainder of the concerns had no bearing on Salopek's or the guards' actual physical safety or any other condition of employment. Instead, Salopek's concerns set forth in his email to Morgan were focused on *Xcel's* interests.

The Respondent fails to address this factual distinction in its brief. Instead, the Respondent argues that it was reasonable to conclude that the complaints were for the mutual aid and protection of the Company's security guards because they were generally about safety. (Respondent's Brief at pg. 26). The Respondent completely ignores the fact that Salopek opined that "the consequences could be catastrophic *for the [C]ompany"* (emphasis added), that "Xcel's rating with the government could be affected," and that it "could jeopardize *the [C]ompany's ability to conduct business*[.]" (emphasis added). It

is clear that Salopek's complaint did not implicate any concern for improving the terms and conditions of employment for the security guards but was instead concerned for the potential harm to the Company.

Moreover, with respect to the conversation Salopek, Lein and Mullen had with Commander Pully, the Respondent ignores the content of those communications and instead focuses solely on the issue of whether they could have brought their complaints directly to third parties. However, during this conversation, Salopek, Lein and Mullen did not address the safety concerns of other guards. Instead, Salopek stated that he was concerned with the safety of *visitors to the park across the street* from the naval base. Thus, his concern was *public* safety, not the guards' safety.

In its Brief, the Respondent glosses over the fact that the evidence clearly shows that Salopek's concerns were not about the guards' terms and conditions of employment, including *their* safety. The Respondent argues that the NLRB should be granted considerable deference in determining if certain conduct was protected. (Respondent's Brief at pg. 26). However, it is clear that the majority opinion is based on surmising what Salopek *may* have been trying to convey in his complaints, as opposed to what he *actually said*. The majority likely focused on what Salopek *may* have been *trying* to say because what he actually said did not constitute concerns implicating the mutual aid and protection of his fellow guards, which is fatal to Respondent's allegations. The Respondent does not address this issue or point to facts supporting the majority's conclusion in its Brief— because it cannot.

**C.** **The Court has Jurisdiction to Hear Argument Regarding the Well-Established Precedent Applying *Jefferson Standard*, in Connection with Salopek's Failure to Disclose the Existence of an Ongoing Labor Dispute.**

The Respondent argues that the Court cannot consider the issue of whether Salopek failed to adequately disclose the connection between officers' complaints and a labor dispute with Xcel because it cannot be considered a logical extension of or a sub-issue of claims that Xcel generally raised. (Respondent's Brief at pg. 39).   The *United Food & Com. Workers Union, Loc. 400 v. Nat'l Lab. Rels. Bd*., 989 F.3d 1034, 1038 (D.C. Cir. 2021), cited by the Respondent, stands for the position that a new theory of the case cannot be raised for the first time on appeal.  However, in this matter, the argument that Salopek did not disclose the existence of an ongoing labor dispute is not a new theory, but a piece of the same case theory brought before the Board.  Xcel argued before the Board that Salopek's comments lost the protection of the Act.  In that discussion, Xcel argued that it was apparent that Salopek was being dishonest because he was attempting to hurt the company.  Thus, his failure to disclose the existence of an ongoing labor dispute is just more evidence that Salopek did not have the safety interest of his fellow officers in mind but was instead motivated by desire to harm the company.  Nor is *U-Haul Co. of Nev. Inc. v. NLRB*, 490 F.3d 957, 963 (D.C. Cir. 2007), also cited by the Respondent, determinative. In the *U-Haul* case, the Court determined that an entirely distinct alternative to the Board's approach could not be considered by the Court on appeal.  Once again, Xcel's argument regarding this issue is part of the argument made before the Board as explained above ad

6

is not an entirely distinct alternative to the Board's approach.

Therefore, because Xcel's argument is not an entirely new theory or alternative not previously examined by the Board, the Court has jurisdiction, as this issue was raised before the Board generally and is a logical extension of the argument raised by Xcel.

**D.** **The Board's Decision that Mark Salopek Engaged in Protected Concerted Activity is Contrary to the NLRA, *Jefferson Standard*, and Well-Established Precedent Applying *Jefferson Standard* Where He Failed to Disclose the Existence of an Ongoing Labor Dispute, as Required.**

The Respondent argues that Salopek's comments were unmistakably clear that he was objecting to Xcel's workplace practices that he believed had a negative effect on his and his fellow officers' safety and thus disclosed the existence of an ongoing labor dispute with Xcel. (Respondent's Brief at pg. 40).

In support of this argument, the Respondent cites the *Five Star Transp. Inc. v. NLRB*, 522 F.3d 46 (1st Cir. 2008) and *Three d, LLC,* 361 NLRB 308 (2014) (*Triple Play case*) cases to support its position that Salopek's complaint sufficiently informed the Navy of his ongoing labor dispute with Xcel. (Respondent's Brief at pg. 40). However, both cases are distinguishable.  In *Five star*, the First Circuit found that the communications from the drivers to the school district regarding the negative effects of awarding Five Star the bus service contact on the drivers' working conditions, were sufficient to put the district on notice of an ongoing labor dispute,  The communications at issue in *Five Star*, though, contained more than just complaints about the drivers' working conditions.  The court explicitly found that the communications "expressed concern that Five Star was not

a union employer" and "requested that the district rebid the contract to preserve the conditions of the then-current collective-bargaining agreement." Thus, while the drivers in *Five Star* did not use the term "labor dispute" their complaints were more than just complaints about working conditions, which alone would be insufficient to put an employer on notice of a labor dispute. In *Three D, LLC v. NLRB*, 629 F.App'x 33 (2nd Cir. 2015) the Second Circuit found that the employee's public comments on the company's Facebook page regarding the employer's tax withholding practices were "made to seek and provide mutual support looking toward group action," not "to undermine its reputation" of the company and thus sufficient to put third parties on notice of a labor dispute. *Three D, LLC v. N.L.R.B.*, 629 F. App'x 33, 37 (2d Cir. 2015).

Unlike *Five Star* and *Triple Play*, the evidence before the Board showed that Salopek did not ever disclose the existence of an ongoing labor dispute in any of the complaints he raised. Instead, the evidence is clear that Salopek's communications were intended solely to alert the Navy to alleged policy, procedural and legal violations by Xcel and were not intended in any way to garner support as part of a dispute between the Xcel security guards and Xcel over terms and conditions of employment. Salopek was simply trying to get Xcel in trouble, not improve his colleagues' working conditions. Regardless of Salopek's motivations, his words were clear, and there is no evidence that he, at any point in his communications with the Navy, disclosed the existence of an *ongoing labor dispute* between the security guards and Xcel.

8

**E.    Mark Salopek's Complaint was Maliciously False.**

The Respondent argues that Salopek's statements, even if false, were still protected because false statements remain protected as long as the statements were made in good faith. (Respondent's Brief at pg. 31).    However, the Respondent fails to address the evidence showing that the actions of Salopek were not in good faith.    The evidence shows that, after completing the investigation, Rake concluded that Salopek "has a hidden agenda of his own" in that he seemed to be "trying to get back at the [C]ompany for some [prior] incidents that occurred with him," namely his prior discipline and demotion. APP 232, pp. 10.    Thus, in light of the clearly deleterious intent of Salopek in raising the predominantly false claims, it is reasonable to infer that the complaints by Salopek were malicious.

The Respondent attempts to distinguish this case from the *St. Luke's Episcopal-Presbyterian Hospitals v. NLRB,* 268 F.3d 575 (8th Cir. 2001), by arguing that unlike the employee in *St. Luke's Episcopal-Presbyterian Hospitals* who made "materially false statements" that served "no legitimate purpose," Salopek's statements were partially true and were made to address various safety concerns he had. (Respondent's Brief at pg. 35). However, the Respondent completely ignores Salopek's ulterior motivations in raising these complaints.    Not only were Salopek's statements made to harm the company but Rake also investigated the allegations and determined that they were false.

The Respondent attempts to distinguish the holding of *Endicott Interconnect Technologies, Inc. v. NLRB*, 453 F.3d 532 (D.C. Cir. 2006) by claiming that Xcel waived

any reliance on this case as it failed to argue that Salopek's comments "were so disloyal as to the lose the Act's protection, regardless of their truth or falsity." (Respondent's Brief at pg. 35). The Respondent argues that instead Xcel argued that Salopek's comments were "maliciously false, in that they were made either with knowledge of their falsity, or with reckless disregard as to their truth or falsity." (Respondent's Brief at pg. 36). However, as stated above, the argument was generally raised before the Board and thoroughly discussed. Xcel argued in its exceptions that Salopek's false statements were disloyal, and he made the statements to a third party with the intent to "get back at the [C]ompany." The Respondent further argues generally and without any supporting evidence that the statements were not disloyal because "the evidence fully supports" the Board's finding that the statement were not disloyal. (Respondent's Brief at pg. 36). However, the Respondent does not cite to any such evidence or reconcile that conclusion with the fact that Salopek had ulterior motivations for the comments.

The Respondent cites *DirectTV, Inc. v. NLRB*, 837 F.3d 25 (D.C. Cit. 2019), to argue that, like employees in *DirecTV*, Salopek and his fellow officers first attempted to resolve the issues with their working conditions with their employer and sought to make statements to third parties only once those internal complaints were unavailing. (Respondent's Brief at pg. 36-37). However, Salopek's actions are distinguishable from the actions of the *DirecTV* employees. In *DirecTV* the employees made statements that were found to be "accurate representations of what [the companies] had instructed the technicians to tell the customers," and any departures from the truth "were no more than

10

good-faith misstatements or incomplete statements, not malicious falsehoods." *DirectTV, Inc.*, 837 F.3d at 42. As argued in Section B, Salopek's complaints were not true, and he also had ulterior motives to cause damage to the company. Thus, unlike the employees in *DirectTV,* whom the Board held had no intent to cause harm to the company, Salopek was attempting to inflict damage on the Company.

## F.     Mark Salopek's Alleged Protected Concerted Activity was Not a Motivating Factor in His Discharge

The Respondent argues that there is substantial evidence to conclude that Salopek's concerted activity was a motivating factor in his termination because Salopek was terminated for a chain of command violation. However, the Respondent ignores and fails to address record evidence to the contrary. The chain of command issue was based on Salopek's bringing the complaint to Commander Pully instead of the Inspector General ("IG"). *Id*., 1021-22. This type of violation was a concern because "the military is a very rigid structure, and [Xcel] [has] to operate inside of its confines . . . ." APP 648. Had Salopek raised the complaint with the IG, he would not have committed a chain of command violation.

The Respondent argues that Xcel cannot impose a procedural prerequisite to exercise of section 7 rights, and thus Xcel cannot impose a chain of command for reporting. (Respondent's Brief at pg. 46-47). The Respondent cites *Guardsmark, LLC v. N.L.R.B*., 475 F.3d 369, 375 (D.C. Cir. 2007) to hold that a chain of command policy prohibiting complaints to a client is a violation of the act. However, the client, the Navy, set the chain of command at issue in this case. Moreover, the chain of command allowed

11

Salopek to complain to the client, as Salopek simply needed to make the complaint to the IG, not Commander Pulley.  Thus, the chain of command at issue here is not a violation of section 8(a)(1).

Secondly, the Respondent points to various statements[1] from Xcel's managers that were allegedly hostile towards Salopek. (Respondent's Brief at pg. 44-45).  However, these statements concerned Lien, who was not even disciplined for his actions in connection with the Complaint and were not made by the individual who decided to terminate Salopek – i.e., Michael Filibeck.  Moreover, all of these statements pre-dated Filibeck's employment by several months, belying any argument that these statements were connected to Filibeck's decision to terminate Salopek's employment. The Respondent tries to overcome this flaw in the Board's decision by arguing that Filibeck's decision was tainted because he consulted with Powless and Terry before deciding to terminate Salopek. The case cited by the Respondent in support of this argument is distinguishable, though.  In *Bos. Mut. Life Ins. Co. v. N.L.R.B.,* 692 F.2d 169, 171 (1st Cir. 1982), the Court found that the individual who terminated the complainant acted in direct response to what the individual with an improper motive told him.  There is no evidence that Filibeck acted in response to what Powless and Terry told him.  In fact, the evidence is clear that Filibeck's decision resulted from Rake's investigation and

---

[1] The comments cited by Respondent include the following:  Terry told Lien that he had made a "big mistake"; Morgan stated that it would be easy to get rid of Lein and called Salopek and Mullen a "cancer"' Morgan told Lein that he was mad that Lein had broken the chain of command, and warned Mullen that he could face discipline after Mullen admitted that he had met with Pulley; Powless warned Lein that he escaped discharge for "jumping the chain of command" only because it was his first time.

recommendation.  In *N. L. R. B. v. Neuhoff Bros., Packers,* 375 F.2d 372, 375 (5th Cir. 1967), the court found that the termination was tainted because a supervisor with a judicially determined anti-union attitude played a "significant role" in the discharge. Again, there is no evidence in this case that Powless and/or Terry played a significant role.   The record is clear that Filibeck's determination was made due to the recommendation by Rake.

Lastly, the Respondent argues that the Board appropriately found that Xcel's explanation for why Salopek could not be transferred to another location was "fictional." The Board cited Filibeck's testimony that the next closest contract was 10,080 miles away. The Respondent argues that this was not a mistake or a typo but proof that Filibeck was exaggerating and, therefore, should not be believed.  However, it defies logic to believe that Filibeck claimed that the nearest contract was *10,080 miles away*, as that would mean that Xcel does not have any contracts within the United States.  In reality, Xcel had contracts that were 245 and 330 miles away, though Filibeck testified that these contracts were geographically too far.

### G.    Xcel Would Have Terminated Mark Salopek, Even Absent His Alleged Protected Concerted Activities.

The Respondent argues that Xcel has failed to prove that it would have discharged Salopek in the absence of his protected activity.

As an initial matter, the Respondent argues that Xcel cannot rely on the recommendation from Rake because Rake did not recommend Salopek's termination and that Xcel could have satisfied Rake's recommendation by transferring Salopek.  The

Respondent also argues, without any explanation, that Xcel has not provided a reasonable explanation for why it could not transfer Salopek. As detailed above, that premise is based on an error in the transcript in which Filibeck claimed that the nearest contract was *10,080 miles away*. This was clearly an error. The closest contracts were 245 and 330 miles away. Thus, Filibeck statements are still true, and a transfer was not feasible.

The Respondent also argues that Filibeck discharged Salopek instead of transferring him because he stated, "if this guy is going to do this kind of activity here, he's going to do it there." However, this interpretation is not supported by any evidence or testimony. It is simply an assumption by the ALJ adopted by the Board, and now by the Respondent. It is not a credible determination.

The Respondent further argues that to the extent the Xcel attempted to rely on Rake's recommendation, it could not because it knew that Rake was motivated by his hostility toward Salopek. However, that conclusion is unsupported by the facts. Neither Filibeck nor anyone from Xcel was present for Rake's interviews of the employees and/or was involved in writing the report. Moreover, Filibeck did not receive Rake's report related to his investigation until well after Salopek was terminated. Thus, while Rake reviewed his findings with Filibeck during their meeting in late October 2018, Filibeck did not have access to the full report until *after* Salopek was terminated. Thus, Xcel was able to rely on Rake's recommendation to remove Salopek from the contract, where it was unaware of any alleged animus on the part of Rake.

Furthermore, the Respondent argues that Xcel cannot rely on Rake's

14

recommendation because any responses the investigation provoked from Salopek were not a proper basis for Salopek's discharge. The Respondent cites *United Servs. Auto. Ass'n v. NLRB*, 378 F.3d 908, 917 (D.C. Cir. 2004), which is distinguishable. In United *Servs. Auto. Ass'n* "there was substantial evidence in the record to support the Board's finding that [the former employee] had responded evasively during the interrogation *because she feared retaliation* against her for engaging in protected concerted activity." *Id*, 378 F.3d 917 (emphasis added). Here, there is no evidence in the record that Salopek was evasive and dishonest because he feared retaliation against him for engaging in protected concerted activity. Instead, the facts show that Salopek was hiding his ulterior motivations to damage the Company. Therefore, Salopek's dishonesty during the investigation is sufficient grounds to have discharged Salopek.

As such, Xcel has carried its burden and established that it would have terminated Salopek even absent is protected concerted activity.

## III.   CONCLUSION

For all the foregoing reasons, Xcel requests that the Court grant its petition for review and deny the Board's cross-application for enforcement of its Order.

Dated:    April 6, 2023                    Respectfully submitted,

*/s/ Jason R. Stanevich*

Jason R. Stanevich (DC53510)
jstanevich@littler.com

LITTLER MENDELSON, P.C.
One Century Tower
265 Church Street; Suite 300
New Haven, CT  06510
Telephone:  203.974.8700
Facsimile:   203.974.8799

**Attorneys for Petitioner/Cross-Respondent**
**XCEL PROTECTIVE SERVICES, INC.**

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3,765 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

Dated:  New Haven, CT
          April 6, 2023

*/s/ Jason R. Stanevich*
Jason R. Stanevich (DC53510)

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 6th day of April, 2023, a copy of the foregoing was

served by electronic means on:

> Linda Dreeben, Esquire
> Ruth E. Burdick, Esquire
> Deputy Associate General Counsel
> National Labor Relations Board
> appellatecourt@nlrb.gov
>
> Carolyn McConnell, Esquire
> Counsel for the General Counsel
> National Labor Relations Board, Region 19
> Carolyn.McConnell@nlrb.gov
>
> Richard M. Olszewski, Esq.
> rich@unionlaw.net

*/s/ Jason R. Stanevich*
Jason R. Stanevich (DC53510)

51